#25222-rev & rem-JKK

**2009 SD 107**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                           Plaintiff and Appellee,

    v.

STEVEN CARL LARSON,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE THIRD JUDICIAL CIRCUIT
MOODY COUNTY, SOUTH DAKOTA

* * * *

HONORABLE TIM D. TUCKER
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANDREW KNECHT
Assistant Attorney General                       Attorneys for plaintiff
Pierre, South Dakota                             and appellee.

N. BOB PESALL                                    Attorney for defendant
Flandreau, South Dakota                          and appellant.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 5, 2009

OPINION FILED **12/09/09**

#25222

KONENKAMP, Justice

[¶1.] Defendant was arrested for simple assault and jailed. Thereafter, he was held for 18 days without a judicial determination of probable cause, in violation of South Dakota law and the United States Constitution. Defendant moved to dismiss. The circuit court denied his motion, but gave him a presumption at trial that his evidence of self defense, which the State declined to preserve, did exist and would have been beneficial to him. Defendant was found guilty of simple assault. On appeal, we reverse and remand.

## Background

[¶2.] Defendant, Steven Carl Larson, was arrested in Moody County on July 24, 2008, and charged with simple assault in violation of SDCL 22-18-1(1), simple assault in violation of SDCL 22-18-1(2), and disorderly conduct in violation of SDCL 22-18-35(1). He was alleged to have assaulted Linette Rainwater in her home on July 24, 2008. Brion Kimball, the Chief of Police for Coleman, South Dakota, investigated the incident. Officer Kimball interviewed Rainwater at her home and took photographs of her injuries. Rainwater told Officer Kimball that defendant came to her home around 8:00 a.m. She and defendant began drinking. Later in the morning they went out to get more alcohol. On returning to Rainwater's house, the two argued. Rainwater could not remember why the argument started. She later testified that defendant came at her while she was sitting on the couch. She tried to keep him off by kicking at him. Defendant grabbed her by the throat and threw her around the room. He struck her on her forehead and face with his fist.

-1-

Afterwards, defendant left Rainwater's home. She received eight stitches above her right eye. She also had marks on her neck and a black eye.

[¶3.]      Officer Kimball went to defendant's residence. He asked defendant about the argument with Rainwater. Defendant initially denied everything, but then acknowledged that something had occurred. He claimed that Rainwater attacked him as he was trying to leave, jumping on his back. He merely threw her off of him, he said. Defendant tried to show Officer Kimball his injuries, which included a bite mark, redness on his arm, and scratches. Officer Kimball arrested defendant. Defendant asked that his injuries be photographed. Officer Kimball did not photograph defendant's injuries, later testifying that he was not able to.

[¶4.]      Officer Kimball prepared a narrative of the investigation, dated July 24, 2008. A "Uniform Complaint/Summons" ticket was issued charging defendant with assault. No arrest warrant was sought or issued. Defendant was transported to the Moody County Sheriff's Office. After being booked, defendant was taken to the Minnehaha County Jail in Sioux Falls. There, defendant again requested that his injuries be documented, specifically asking that photographs be taken. None were taken. Defendant was told to sign up for sick call. He signed up, but received no response to his request. He then made written requests that his injuries be documented. The first, dated July 31, 2008, stated, "Please! I'm on hold from Moody Co. I need picture taken of bite mark/bruise incurred during alleged assault. Need A.S.A.P. before evidence disappears! Thank you." This request was answered on August 1, 2008, with, "Contact your attorney for any evidentiary question or request you may have."

[¶5.] On August 3, 2008, Defendant, a military veteran, submitted another inmate request form, stating, "I have also been deprived of my heart, P.T.S.D. (post traumatic stress disorder) meds, as well as for my hiatal hernia. I have to sick call twice to no avail. Please! I have been incarcerated for 11 days now and I still have never been arraigned, therefore I do not have an attorney to contact. I am 100% permanently and totally disabled. I do not have any money for a surety bond. Contact Moody Co. please and ask them for a PR Bond on my behalf. I have no other recourse open to me. Also, I was never given my rights!" This request was answered on August 4, 2008, with, "You are a Moody County prisoner your bond is $1,000 cash/surety. The medical staff is aware and signed you up for sick call."

[¶6.] Defendant submitted a grievance form, stating, "Moody County needs to be made aware of my inmate request as of 8-4-08. I do not have an attorney because I have been given no arraignment. If you refuse to contact Moody Co. on my behalf, then Minnehaha Co. will also be named in the upcoming lawsuit on violating my constitutional civil rights!" No response was given to this request.

[¶7.] Defendant remained in jail for 18 days. He was provided a form to request court-appointed counsel on August 13, 2008. He first appeared in court on August 18, 2008, and was appointed counsel. After being arraigned, defendant pleaded not guilty. He moved to dismiss the case, alleging that the State deprived him of due process, violated SDCL 23A-4-1, and prejudiced his defense when it failed to timely arraign him and document his injuries. At a hearing on November 18, 2008, defense counsel asked the circuit court to dismiss the charges "on grounds that the State's handling of [defendant] following his arrest violated his rights to

due process in several different ways." The motion was denied. But the court ruled that defendant would receive a "presumption at trial that the evidence which the State failed to preserve, if available, would have been favorable to the defendant."

[¶8.] Defendant waived his right to a jury trial, and, in a bench trial, the circuit court found defendant guilty of simple assault under SDCL 22-18-1(2), and acquitted him of the remaining charges. Defendant was sentenced to 60 days in jail with all but 18 days suspended, for which he received credit for time served. Defendant appeals asserting several issues, which we consolidate: whether the circuit court should "have dismissed the action on federal and state constitutional due process grounds" and for violation of SDCL 23A-4-1, which requires that arrested persons be brought before a committing magistrate without unreasonable delay.[1] We review de novo alleged constitutional violations. State v. Ball, 2004 SD 9, ¶¶18-19, 675 NW2d 192, 198-99 (citations omitted).

**Analysis and Decision**

[¶9.] In 1991, the United States Supreme Court declared that individuals arrested without a warrant must have a judicial probable cause determination

---

1. SDCL 23A-4-1 provides:

   A law enforcement officer shall, without unnecessary delay, take the arrested person before the nearest available committing magistrate. Any person, other than a law enforcement officer, making an arrest shall, without unnecessary delay, take the arrested person before the nearest available committing magistrate or deliver him to the nearest available law enforcement officer. If a person arrested without a warrant is brought before a committing magistrate, a complaint shall be filed forthwith. When a person, arrested with or without a warrant or given a summons, appears initially before a committing magistrate, the committing magistrate shall proceed in accordance with the applicable provisions of §§ 23A-4-2 to 23A-4-5, inclusive.

within 48 hours after the arrest unless a bona fide emergency or other extraordinary circumstance exists. County of Riverside v. McLaughlin, 500 US 44, 56, 111 SCt 1661, 1670, 114 LEd2d 49 (1991); *see also* Gerstein v. Pugh, 420 US 103, 95 SCt 854, 43 LEd2d 54 (1975). We have never specifically addressed the 48-hour rule in the constitutional context. Our statutory requirement states that any person arrested, with or without a warrant, must be brought before a committing magistrate "without unnecessary delay[.]" SDCL 23A-4-1. The statute specifies no particular time frame.

[¶10.]     While an officer's "on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime," such probable cause will not persist to justify continued detention. *See Gerstein*, 420 US at 113-14, 95 SCt at 863, 43 LEd2d 54. Arrested persons are presumed innocent, and courts "should make every attempt to minimize the time a presumptively innocent individual spends in jail." *McLaughlin,* 500 US at 58, 111 SCt at 1670, 114 LEd2d 49. Moreover, "[t]he consequences of prolonged detention may be more serious than the interference occasioned by arrest. Pretrial confinement may imperil a suspect's job, interrupt [a] source of income, and impair [ ] family relationships. Even pretrial release may be accompanied by burdensome conditions that effect a significant restraint of liberty." *Gerstein*, 420 US at 114, 95 SCt at 863, 43 LEd2d 54 (internal citations omitted).

[¶11.]     Accordingly, though our statute only requires persons arrested to be brought before a committing magistrate without unnecessary delay, those arrested without a warrant are constitutionally entitled to a judicial determination of

probable cause within 48 hours of arrest. *See McLaughlin*, 500 US at 56-57, 111 SCt at 1670, 114 LEd2d 49. No particular post-arrest procedure is required, so long as probable cause is determined promptly. *Id.* A probable cause determination is not adversarial, as it can be based entirely on hearsay and written testimony. *Gerstein*, 420 US at 120, 95 SCt at 866, 43 LEd2d 54. Therefore, an arrested person has no right to be physically present or have representation for a probable cause determination. All that is required is that a neutral magistrate determine whether there is probable cause to believe the offense was committed by the accused. *Id.* at 111, 95 SCt at 861, 43 LEd2d 54. In most circumstances, the issuance of a warrant based on a statement from the arresting officer suffices to meet the probable cause requirement.

[¶12.] When probable cause is not judicially determined within 48 hours, the State bears the burden of proving that the delay was not unreasonable.[2] *McLaughlin*, 500 US at 56-57, 111 SCt at 1670, 114 LEd2d 49. The State must establish that a bona fide emergency or other extraordinary circumstance existed prompting the delay. *Id.* ("The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends."). "In evaluating whether the delay in a particular case is unreasonable, however, courts must allow

---

2.    If probable cause is determined within 48 hours, the defendant bears the burden of proving that the delay was unreasonable. *Id.* That is not to say that all probable cause determinations made within 48 hours will be declared reasonable. *Id.* ("Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.").

a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities." *Id.*

[¶13.] Here, defendant was arrested on July 24, 2008. He was immediately incarcerated. No arrest warrant was ever issued. He remained in jail for 18 days. Although the option of posting bond was available, defendant was nonetheless incarcerated without any finding of probable cause. In fact, no probable cause determination was made until September 17, 2008. Unmistakably, the State violated the constitutionally required 48-hour rule.

[¶14.] What remedy is appropriate for a *McLaughlin* violation?[3] The Supreme Court has not resolved this issue. *See* Powell v. Nevada, 511 US 79, 84-85, 114 SCt 1280, 1283-84, 128 LEd2d 1 (1994); *see also* United States v. Fullerton, 187 F3d 587, 590-91 (6thCir 1999). As one court stated,

> A motion to dismiss criminal charges with prejudice is the most severe sanction that can be had when the government errs in a criminal case. Precluding trial of the accused based on some unauthorized or unconstitutional conduct on the part of wayward prosecutors, police, or other officers within the law enforcement or judicial system deprives the public of its ability to protect itself by punishing an offender.

---

3. Although we previously held that "illegal detention is a nonconstitutional and nonjurisdictional defect" in *State v. Poss,* that case was decided before the *Gerstein/McLaughlin* decisions. 298 NW2d 80, 85 (SD 1980) (citations omitted).

Commonwealth v. Viverito, 661 NE2d 1304, 1306 (Mass 1996); *see also Gerstein*, 420 US at 119, 95 SCt at 865, 43 LEd2d 54 ("illegal arrest or detention does not void a subsequent conviction"); Powell v. State, 930 P2d 1123, 1125-26 (Nev 1997) (unlawful detention does not always require exclusion).

[¶15.]     Although a review of the decisions dealing with violations of the 48-hour rule reveals no case where charges were dismissed, still no case was as egregious as this one.  Our research yields no modern case where a person arrested without a warrant was held in jail for anywhere near 18 days without a probable cause determination.  On the contrary, most cases involve only hours of prolonged detention and in some instances a few additional days.  *See* United States v. Davis, 174 F3d 941 (8thCir 1999) (2-hour delay); Griffith v. State, 788 NE2d 835 (Ind 2003) (63 hours); Odum v. State, 846 A2d 445, 458-59 (Md 2004) (30.5 hours);*Viverito*, 661 NE2d at 1305 (30 hours); Swinney v. State, 829 So2d 1225 (Miss 2002) (43 hours); *Powell*, 930 P2d at 1124 (4 days); State v. Koch, 499 NW2d 152, 157 (Wis 1993) (92 hours).  Many of the cases involve confessions or evidence gained by the State during the delay, rather than evidence lost as a result of an unlawful detention.  *See Griffith*, 788 NE2d at 841 (confession after violation); *Odum*, 846 A2d at 458-59 (prejudicial statement made); *Swinney*, 829 So2d at 1232 (same); *Powell*, 930 P2d at 1126 (same).  In situations where defendants confess or make other incriminating statements during an unlawful detention, courts are faced with decisions whether to suppress the confession, statements, or evidence.[4]

---

4.     Some cases are civil rights suits, and therefore, do not implicate what remedy is available to a defendant in a criminal case.  *See* United States v. Fullerton,

(continued . . .)

[¶16.]     Here, we have no confession or evidence gained after the 48 hours elapsed. Rather, we have potentially exculpatory evidence lost as a result of the delay. What remedy, then, would be available when suppression is not an option? To balance the societal interest in punishing criminal behavior and a defendant's right to due process, we conclude that dismissal would be warranted "in cases of egregious prosecutorial misconduct or on a showing of prejudice (or a substantial threat thereof), or 'irremediable harm' to the defendant's opportunity to obtain a fair trial." *See Viverito*, 661 NE2d at 1306 (citation omitted).

[¶17.]     Using the *McLaughlin* standards, it must be determined whether the State had a bona fide emergency or other extraordinary circumstance justifying the unreasonable delay in this case. Because the circuit court did not have the benefit of today's decision, the State was not required to justify its delay. Indeed, the record contains no explanation for it. Accordingly, the case is remanded for the circuit court to consider whether the State had a bona fide emergency or extraordinary circumstance justifying the unreasonable delay. The State has the burden of establishing that a bona fide emergency or extraordinary circumstance

_____

(. . . continued)
        187 F3d 587 (6thCir 1999) (option to file a *Bivens v. Six Unknown Narcotics Agents*, 403 US 388, 91 SCt 1999, 29 LEd2d 619 (1971)); Luck v. Rovenstine, 168 F3d 323 (7thCir 1999) (defendant brought a 42 USC 1983 claim for his 8-day unlawful detention); Willis v. City of Chicago, 999 F2d 284 (7thCir 1993) (45 hours found unreasonable; defendant awarded nominal damages and attorney's fees).

existed. If no adequate justification can be shown, the court must determine if defendant's opportunity to obtain a fair trial was prejudiced by the delay.[5]

[¶18.]     Because we reverse and remand, we decline to address defendant's remaining issues.

[¶19.]     Reversed and remanded.

[¶20.]     GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY and SEVERSON, Justices, concur.

---

5.     We acknowledge that the court already determined that defendant was not prejudiced by the *State's loss of evidence* (the failure to document defendant's injuries) because the court gave defendant a presumption at trial that the evidence existed and would benefit him. However, on review of a *McLaughlin* violation, the court must consider whether defendant was prejudiced *as a result of the unreasonable delay,* i.e, denied his opportunity to obtain a fair trial.