# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 116

State of North Dakota,                                    Plaintiff and Appellant

v.

Marco Van Der Heever,                               Defendant and Appellee

## No. 20200309

Appeal from the District Court of Pembina County, Northeast Judicial District, the Honorable Laurie A. Fontaine, Judge.

REVERSED AND REMANDED.

Opinion of the Court by McEvers, Justice, in which Chief Justice Jensen, Justices VandeWalle and Tufte joined. Justice Crothers filed an opinion concurring specially.

Rebecca L. Flanders, State's Attorney, Cavalier, ND, for plaintiff and apellant.

Dustin J. Slaamod, Cavalier, ND, for defendant and appellee.

**McEvers, Justice.**

[¶1]   The State appeals from a district court order granting Marco Van Der Heever's motion to suppress evidence, arguing the officer had reasonable suspicion to stop Van Der Heever's vehicle. We reverse and remand for further proceedings.

I

[¶2]   Van Der Heever was charged with driving under the influence of intoxicating liquors. He moved to suppress the evidence obtained as a result of his vehicle being stopped by law enforcement. The district court held a hearing, where Sergeant Cory Mortensen provided the sole testimony.

[¶3]   Mortensen testified he was contacted by dispatch to respond to a possibly impaired driver at approximately 12:30 a.m. on June 28, 2020. Dispatch informed him that the reporting party, John Towes, stated a silver F-150 pickup with branches in the bed of the truck was traveling on Central Avenue in Walhalla, North Dakota, stopping and reversing in the middle of the road. Towes reported the driver's actions caused him to stop and reverse his vehicle to avoid being hit by the F-150, which occurred "many times." Mortensen testified that Central Avenue is the road between the two bars in Walhalla, and that Towes reported the F-150 was parked "up town at the local bar all afternoon." Mortensen stated that he is personally familiar with Towes from prior community contacts. After receiving Towes' phone number from dispatch, Mortensen called him. Towes identified the driver as male and believed he was probably impaired. Towes did not know where the F-150 was located at that time, but called back shortly after and said the vehicle was parked on 7th Street, just north of Delano Avenue. Towes was parked down the road, watching the F-150, and he told Mortensen the driver of the F-150 was outside of his parked vehicle.

[¶4]   About fifteen minutes later, Mortensen arrived at the location and pulled behind the vehicle. He saw the driver's side door was open. As Mortensen was

about to exit his vehicle, the driver's side door closed and the vehicle slowly drove away. Mortensen activated his lights and stopped the vehicle. He identified the driver as Van Der Heever. Following an investigation, Van Der Heever was charged with driving under the influence.

[¶5]   After the suppression hearing, the district court granted Van Der Heever's motion to suppress, concluding that Mortensen should have corroborated some of Towes' report before stopping Van Der Heever's vehicle. The State appealed, complying with N.D.C.C. § 29-28-07(5) by filing the required statement from the prosecuting attorney.

II

[¶6]   The State argues the district court erred in granting the motion to suppress because Mortensen had reasonable suspicion to stop Van Der Heever's vehicle. Our standard for reviewing the district court's decision on a motion to suppress is well-established:

> [T]his Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance. This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Ashby*, 2017 ND 74, ¶ 9, 892 N.W.2d 185. Whether the facts support a reasonable and articulable suspicion is a question of law, which is fully reviewable on appeal. *Id.*

[¶7]   The Fourth Amendment to the United States Constitution, applicable to the states under the Fourteenth Amendment, and Article I, section 8, of the North Dakota Constitution, protect individuals from unreasonable searches and seizures. *Ashby*, 2017 ND 74, ¶ 8. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Id.* A law enforcement officer must have a

2

reasonable and articulable suspicion that a motorist has violated or is violating the law to justify stopping a moving vehicle for investigation. *Gabel v. N.D. Dep't of Transp.*, 2006 ND 178, ¶ 9, 720 N.W.2d 433. "Whether an officer had a reasonable and articulable suspicion is a fact-specific inquiry that 'is evaluated under an objective standard considering the totality of the circumstances.'" *State v. Wolfer*, 2010 ND 63, ¶ 6, 780 N.W.2d 650 (quoting *Gabel*, at ¶ 9). Under this standard, "the articulable aspect requires that the stop be justified with more than just a vague hunch or other non-objective facts; and the reasonable aspect means that the articulable facts must produce, by reasonable inference, a reasonable suspicion of unlawful conduct." *State v. Taylor*, 2018 ND 132, ¶ 11, 911 N.W.2d 905 (emphasis omitted).

[¶8]   We have previously discussed three situations that provide an officer with reasonable and articulable suspicion to stop a vehicle: (1) when the officer relied upon a directive or request for action from another officer; (2) when the officer received tips from other police officers or informants, which were then corroborated by the officer's own observations; and (3) when the officer directly observed illegal activity. *Anderson v. Director, N.D. Dep't of Transp.*, 2005 ND 97, ¶ 9, 696 N.W.2d 918. Further, we have discussed the analytical framework necessary to determine whether an informant's tip is sufficiently reliable to raise a reasonable suspicion without the officer's corroboration:

> Information from a tip may provide the factual basis for a stop. In evaluating the factual basis for a stop, we consider the totality of the circumstances. This includes the quantity, or content, and quality, or degree of reliability, of the information available to the officer. Although the totality-of-the-circumstances approach makes categorization difficult, our cases involving reasonable suspicion arising from an informant's tip demonstrate the inverse relationship between quantity and quality, and may be analyzed generally according to the type of tip and, hence, its reliability. As a general rule, the lesser the quality or reliability of the tip, the greater the quantity of information required to raise a reasonable suspicion.

*Anderson*, 2005 ND 97, ¶ 10 (cleaned up).

[¶9]  "Information from an informant whose identity is easily ascertainable has a higher indicia of reliability than information obtained from a purely anonymous informant." *Anderson*, 2005 ND 97, ¶ 15. Citizen informants are presumed to be a reliable source of information. *State v. Ebel*, 2006 ND 212, ¶ 15, 723 N.W.2d 375. "A citizen informant is someone who volunteers information, does not want anything in return for the information, and is not at risk or in fear of going to jail." *City of Dickinson v. Hewson*, 2011 ND 187, ¶ 10, 803 N.W.2d 814 (cleaned up).

[¶10] Towes was a citizen informant. He volunteered information to dispatch and Mortensen without wanting anything in return for the information he provided. Further, he was not at risk or in fear of going to jail. Not only is Towes' identity easily ascertainable, but Mortensen testified that he personally knew Towes from prior community contacts. Accordingly, the information being provided by Towes has a high indicia of reliability and is presumed reliable. *See Hewson*, 2011 ND 187, ¶ 10.

[¶11] The district court concluded that Mortensen lacked reasonable suspicion to stop Van Der Heever's vehicle because he failed to corroborate Towes' information, relying on *Anderson* and *Gabel*. In *Anderson*, law enforcement received a call from a motorist reporting a "possible reckless driver or drunk driver" that had hit cones in a construction zone. 2005 ND 97, ¶ 2. The informant reported a description of the vehicle and continued following him and providing location updates. *Id.* The officer stopped the suspect after following him for two miles without observing any illegal or erratic driving. *Id.* at ¶ 3. Although the officer was unaware of the informant's name, he knew the informant had pulled off to the side of the road and was being interviewed by an assisting officer. *Id.* Thus, we concluded the informant's identity was easily ascertainable, and he had a higher indicia of reliability than a purely anonymous informant. *Id.* at ¶¶ 14, 21. However, the Department of Transportation failed to establish that the officer was aware of the suspect hitting the cones in the construction zone before the stop. *Id.* at ¶ 19. We held that the "bare assertion of a 'possible reckless driver or drunk driver,'" was not of sufficient quantity to provide the officer with reasonable suspicion of criminal activity. *Id.* at ¶ 21.

4

[¶12] In *Gabel*, the informant reported a vehicle was speeding up and slowing down, not allowing him to pass. 2006 ND 178, ¶ 2. The informant also reported the license plate, and continued to follow the driver and relay his location. *Id.* The officer located the vehicle traveling at a speed of 47 miles per hour in a 65 mile per hour zone, and stopped the vehicle. *Id.* at ¶ 3. There was no minimum speed limit required on the road, and the officer did not observe a traffic violation. *Id.* The officer knew the informant, but believed he had a criminal record. *Id.* at ¶ 12. Although the reliability of the tip was discussed, we ultimately did not determine the issue, and assumed the informant reliable, stating:

> However, we need not determine the reliability of [the informant], because, even assuming he was a reliable informant, his tip of a vehicle speeding up and slowing down, not allowing a car to pass is insufficient to support a traffic stop absent corroboration of otherwise illegal activity or suspicious conduct. Driving on a highway slightly below the speed limit is not sufficiently suspicious to support a traffic stop.

*Id.* The majority concluded that based upon the information conveyed, there was only a possibility the driver violated the law, and thus was functionally equivalent to the tip in *Anderson* of the "possible reckless driver or drunk driver." *Id.* at ¶ 15. The Court held the officer lacked reasonable suspicion to stop the vehicle. *Id.* at ¶ 16.

[¶13] However, where a known, or easily ascertainable, informant provides a greater quantity of information than a bare assertion of possible impaired or erratic driving, the officer need not personally observe, or corroborate, evidence of criminal activity in order to have reasonable suspicion to stop a vehicle. *See, e.g., Ashby*, 2017 ND 74, ¶¶ 13-17; *Hewson*, 2011 ND 187, ¶¶ 11-14; *State v. Lykken*, 406 N.W.2d 664, 666 (N.D. 1987). In *Navarette v. California*, 572 U.S. 393, 395 (2014), an anonymous 911 caller reported that a vehicle had run her off the road and provided the vehicle description and location. The officer stopped the vehicle without observing any suspicious conduct. *Id.* at 403. The United States Supreme Court held the officer had reasonable suspicion of drunk driving based on the 911 caller's tip. *Id.* at 404. The Court concluded the tip was reliable because the caller claimed an eyewitness basis of knowledge,

the short time between the incident and the call suggested the caller had little time to fabricate the report, and a reasonable officer could conclude that a false tipster would hesitate to call 911 because of the features the system has to safeguard against making false reports with immunity. *Id.* at 399-401. The Court determined further corroboration of the tip was unwarranted, noting that "an officer who already has such a reasonable suspicion need not surveil a vehicle at length in order to personally observe suspicious driving." *Id.* at 404.

[¶14] The information provided by Towes was more than a bare assertion of a "possible reckless driver or drunk driver." Towes, a known citizen informant whose tip is presumed reliable, identified the color and model of the vehicle, with the unique descriptor of it having branches in the bed of the truck. He reported the F-150 was parked at the bar "all afternoon." He specifically described the actions of the driver of the vehicle as stopping and reversing the vehicle in the middle of Central Avenue in Walhalla, causing him to do the same to avoid a collision, which occurred "many times." Mortensen testified that Central Avenue was the road between the two bars in Walhalla. Towes identified the driver as male and believed he was probably impaired. Further, Towes supplied the location of the vehicle, while simultaneously watching it from down the road, and noted the driver was outside of his parked vehicle. Mortensen arrived at the location provided approximately fifteen minutes later and found the described vehicle with the driver's side door open. Mortensen corroborated the location of the vehicle and the vehicle's description, but he did not corroborate the criminal activity. Such corroboration is not required under the Fourth Amendment, *Navarette*, 572 U.S. at 404, and Van Der Heever has not provided any argument for a different approach under N.D. Const. art. I, § 8. Thus, the district court misapplied the law when it concluded Mortensen needed to further corroborate Towes' information. Under the totality of the circumstances, Mortensen had reasonable suspicion of criminal activity, and the court erred by granting Van Der Heever's motion to suppress evidence.

## III

[¶15] We reverse the suppression order and remand for further proceedings.

[¶16] Jon J. Jensen, C.J.
     Gerald W. VandeWalle
     Lisa Fair McEvers
     Jerod E. Tufte

**Crothers, Justice, specially concurring.**

[¶17] I concur in the result here based on my writing in *State v. Hendrickson*, 2019 ND 183, ¶¶ 17-24, 931 N.W.2d 236 (Crothers, J., specially concurring).

[¶18] Daniel J. Crothers